877 So.2d 697 (2004)
Paul Augustus HOWELL, Appellant,
v.
STATE of Florida, Appellee.
No. SC03-103.
Supreme Court of Florida.
May 6, 2004.
Rehearing Denied June 25, 2004.
*698 Clyde M. Taylor, Jr., and Baya Harrison, III, Associate Counsel, Tallahassee, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
Howell appeals the denial of his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. Howell asserts that trial counsel was ineffective in declining to present evidence, in support of a defense of intervening cause in the guilt phase and as nonstatutory mitigation in the penalty phase, that the victim in this case, a Florida Highway Patrol (FHP) trooper, violated agency policy in conducting a search of the package containing the bomb that caused the trooper's death. Howell also asserts that his sentence is unconstitutional in light of recent United States Supreme Court decisions. For the reasons that follow, *699 we reject both contentions and affirm the denial of the motion for postconviction relief.

I. FACTS AND PROCEDURAL HISTORY
Most of the pertinent facts from trial are contained in this Court's opinion in the direct appeal:
In January of 1992, Howell constructed a bomb for the specific purpose of killing Tammie Bailey at her home in Marianna, Florida. Bailey, Howell, and Howell's brother, Patrick, were part of a drug ring involving a number of other individuals in which drugs were obtained in Fort Lauderdale and then sold in Marianna, Florida. Howell intended to eliminate Bailey as a witness because she had knowledge that could link Howell and his brother to a prior murder. The bomb was placed inside a microwave oven and then the oven was gift-wrapped. Howell paid Lester Watson to drive and deliver the microwave to Bailey. Although he knew that Howell had often made pipe bombs, Watson testified that he thought the microwave contained drugs. Howell rented a car for Watson to use for the trip. Watson was accompanied on the trip by Curtis Williams.
While traveling on I-10 toward Marianna, Watson was stopped by Trooper Jimmy Fulford for speeding. Fulford ran a registration check on the car and a license check on Watson, who gave the trooper a false name and birth date because he did not have a valid driver's license. The radio dispatcher contacted the car rental company and was informed that Howell had rented the car. The dispatcher contacted Howell at his home in Fort Lauderdale, Florida, to determine whether the rental car had been stolen from him. Howell told the dispatcher that he had loaned the car to Watson but did not know that Watson would be traveling so far with the vehicle. Howell was informed by the dispatcher that Watson was going to be taken to the Jefferson County Jail. Howell did not give any warning to the dispatcher regarding the bomb.
Deputies Harrell and Blount of the Jefferson County Sheriff's Department arrived at the scene and Watson gave them permission to search the vehicle. Trooper Fulford and the deputies observed the gift-wrapped microwave in the trunk of the car. Watson was arrested for speeding and driving without a valid driver's license and was transported, along with Williams, to the jail by Deputy Blount. Deputy Harrell also proceeded to the jail, leaving Trooper Fulford alone with the rental car. Shortly thereafter, a massive explosion took place at the scene. Testimony presented at Howell's trial by the State's explosives expert indicated that Trooper Fulford had been holding the microwave in his hands when the bomb went off. Trooper Fulford died instantly due to the massive trauma caused by the explosion.
Howell v. State, 707 So.2d 674, 676 (Fla.1998).
Attorney Frank Sheffield was appointed to represent Howell both in the state prosecution for the murder of Trooper Fulford and in a related federal drug conspiracy prosecution. The federal case was tried first. Sheffield withdrew from the federal case after jury selection because his wife received a phone call threatening Sheffield if Howell "goes down." Id. at 678. Sheffield remained counsel in the state murder prosecution, and the case went to trial nine months after the threat was made. Id. at 678-79. Because an impartial jury could not be impaneled in Jefferson County, *700 where Trooper Fulford was killed, the trial was transferred to Escambia County. The jury found Howell guilty of first-degree murder and of making, possessing, placing, or discharging a bomb. In a special verdict, the jury also found that Howell committed both premeditated and felony murder.[1] In the penalty phase, the jury recommended death by a vote of ten to two. The trial court concluded that the aggravating circumstances far outweighed the mitigating circumstances and imposed death for the murder. See id. at 676-77.[2]
On direct appeal, this Court affirmed Howell's convictions and death sentence. See id. at 679. The Court rejected Howell's guilt-phase claim that the trial court erred in refusing to appoint different counsel or a second attorney. The Court also rejected Howell's challenge to the aggravators of knowingly creating a great risk to many persons, commission of the murder to prevent arrest, CCP, and that the victim was a law enforcement officer engaged in official duties. See id. at 680-82. Addressing the claim that Howell did not knowingly kill a law enforcement officer, this Court stated:
[Howell] had knowledge that Lester Watson had been arrested and that law enforcement officers had custody of the car. At the time the dispatcher called Howell to ask whether the rental car had been stolen, Howell chose not to warn the officers of the lethal bomb in the trunk. Based on this knowledge, Howell knew or could have reasonably foreseen that law enforcement personnel would search the vehicle and its contents and thereby detonate the bomb. We find that this aggravator was properly found by the trial court.
Id. at 682. Finally, this Court held that the death penalty was not disproportionate. See id. at 682-83.
Howell's initial postconviction counsel filed a "shell" motion for postconviction relief, and successor counsel filed an amended motion. Many of the claims initially raised were abandoned below, and only two issues are presented in this appeal: (1) whether trial counsel was ineffective in both the guilt and penalty phases in failing to assert that the trooper's violation of FHP procedures in opening the package containing the bomb constituted an intervening cause, and (2) whether Florida's death penalty is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
The trial court conducted an evidentiary hearing on the first of these claims. Attorney William Pfeiffer testified that he represented Howell in his federal drug conspiracy trial. Pfeiffer assumed representation in the federal case after jury *701 selection and three days before trial when Sheffield, who had previously been appointed counsel, withdrew. Based on a policy statement in an FHP manual that officers were not permitted to search closed and wrapped containers, Pfeiffer moved in the federal trial to suppress the physical evidence concerning the explosion that killed Fulford. The motion was denied on grounds that Howell lacked standing to contest the search because the vehicle that he rented was not in his possession.
Sheffield testified that he withdrew from the federal case because of the threat communicated to his wife just before trial. Sheffield testified that he remained Howell's counsel on the state murder case, which was tried nine months after the threat, because tensions had subsided and because he was both more experienced than Pfeiffer in murder cases and more familiar with this particular case. In the murder trial, Sheffield originally considered an insanity defense, but it did not "materialize." He also considered and rejected raising any guilt- or penalty-phase issue that would have blamed Fulford for his own death. The theory of defense used at trial was that Howell did not make the bomb, based on an assertion that several of the witnesses who identified him as the bombmaker were not credible because they made deals with the State for lesser sentences. Sheffield also attempted to shift the blame to Watson, who was "the most guilty because he knew exactly what was in the package, and he was the one that was standing looking Trooper Fulford in the eye, and he didn't say anything."
Sheffield said he rejected an "intervening cause" argument in both the guilt and penalty phases despite his belief that Fulford violated FHP policy in opening the package. Among the considerations that influenced counsel's decision was the fact that although Howell was contacted by the FHP dispatcher during the stop of Watson and was told that the car rented in his name would be impounded, Howell did not give any warning about the bomb in the microwave oven. Sheffield also stated that it was his understanding that the package would be searched at some point, either on the side of the road or at an impound lot. Moreover, although the trial was moved from Jefferson County, where passions ran high, the case was tried in Escambia County, where in Sheffield's experience the jurors tended to be "very law-and-order, very pro-prosecution oriented." Sheffield stated that after discussion with Howell, he did argue to the jury that there was no intent to kill an officer.
In light of these considerations, Sheffield maintained that any argument that Fulford was responsible for his own death was "no defense" or, at best, a legal argument that would have resulted in a unanimous death recommendation rather than the ten-to-two death recommendation actually rendered. Accordingly, trial counsel did not present evidence or argument, in either the guilt or penalty phase, that Fulford violated FHP rules in opening the package containing the bomb.
The trial court denied the motion for postconviction relief on all grounds. The court specifically addressed the "intervening cause" claim, and found that because of the concern over alienating the jury, trial counsel was "not ineffective for failing to attempt to shift blame for the explosion to the trooper for his actions."

II. ANALYSIS

A. Ineffective Assistance Claim
This claim concerns a paragraph in the Florida Highway Patrol Policy Manual concerning items in impounded vehicles:

*702 11.04.04 Impounded Vehicle Inventories
In order to secure the owner's property and to protect the Department from claims, it is necessary to inventory the contents of all vehicles being towed and/or stowed. The contents of the vehicle include, but are not limited to, all packages and containers located within the passenger compartment, the trunk, or any other secured area of the vehicle. Unless locked or securely wrapped, all luggage, packages, and containers, whether opened or closed, shall be opened and their contents inventoried. Locked or securely wrapped luggage, packages, and containers shall not be opened except as otherwise authorized by law or by owner consent, but shall be indicated on the inventory list as locked or securely wrapped items.
Howell claims that trial counsel was prejudicially deficient in failing to assert, in support of both a defense of intervening cause during the guilt phase and as nonstatutory mitigation during the penalty phase, that Trooper Fulford violated this policy statement, thereby contributing to his own demise. The State responds that there is no evidence that the trooper violated the policy, because he was acting pursuant to consent to search given by the car's driver. The State also relies upon trial counsel's testimony during the rule 3.850 hearing that he did not consider any claim that blamed the trooper for his own death to be viable trial strategy because it would have offended the jurors. Howell counters that the evidence of the trooper's policy violation could have been presented in a sensitive and inoffensive manner, that this would have been a better strategy than the meritless defense presented at trial, and that the evidence would have supported a penalty-phase theme of lack of specific intent to kill Trooper Fulford. In addressing Howell's claim, we assume but do not decide that the policy relied upon by Howell actually applied to the facts in this case.
The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case the right to assistance of counsel. A defendant seeking to establish a denial of this right because of counsel's ineffectiveness must make a two-pronged showing of deficient performance by counsel and resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards. See Rutherford v. State, 727 So.2d 216, 219 (Fla.1998). Second, the deficiency must be shown to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined. See id. The two prongs are related, in that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. (quoting Strickland, 466 U.S. at 686, 104 S.Ct. 2052) (alteration in original). In reviewing a trial court's ruling on an ineffective assistance claim in postconviction proceedings, this Court defers to findings of fact based on competent, substantial evidence but independently assesses deficiency and prejudice as mixed questions of law and fact. See Freeman v. State, 858 So.2d 319, 323 (Fla.2003); Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999).
Howell acknowledges that this is not a case of inadequate investigation of a viable defense in which trial counsel overlooked the alleged policy violation. Rather, trial counsel concluded that a defense *703 based on the violation was not viable and, as a strategic matter, would only have inflamed the jury. In Strickland, the Supreme Court stated that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690, 104 S.Ct. 2052. See also Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (stating that "the deference owed such strategic judgments" under Strickland is defined "in terms of the adequacy of the investigations supporting those judgments"). In Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000), this Court held that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Additionally, this Court has recognized that a concern about being perceived as blaming the victim for his or her own death is a valid reason for declining to introduce particular evidence. See Spencer v. State, 842 So.2d 52, 61-62 (Fla.2003) (concluding that trial counsel was not ineffective in choosing not to present evidence of an antagonistic relationship between the defendant and the victim for fear of being perceived of blaming the victim for the defendant's actions).
Howell concedes that the alleged policy violation would not have been an intervening cause as a matter of law, but asserts nonetheless that had trial counsel introduced the evidence and requested an instruction thereon, the jury might have returned a verdict other than guilty of first-degree murder. In support of this contention, Howell cites State v. Rushing, 532 So.2d 1338 (Fla. 4th DCA 1988), in which the court reversed the dismissal of an information charging manslaughter by culpable negligence based on the defendant's act of giving a loaded gun to the suicidal victim. The court concluded in Rushing that because "as a matter of law it cannot be said that it was unforeseeable that the victim would do that very thing which she had already announced she would," the question of foreseeability was for the jury. Id. at 1340. See also Miller v. State, 782 So.2d 426, 430 (Fla. 2d DCA 2001) (holding that the issue of whether the defendant's removal of a stop sign from an intersection was the proximate cause of a motorist's death was a jury question).
In this case, death was a clearly foreseeable result of Howell's act of placing a bomb in a gift-wrapped microwave oven and setting it to explode when the oven door was opened. Indeed, it was almost certain that Howell's actions would result in the death of someone, if not his intended victim. Therefore, the alleged policy violation by the trooper in searching the package's contents would not have negated any of the elements of first-degree murder, including that the death was caused by Howell's criminal act.
Moreover, evidence presented during the guilt phase showed that by the time Fulford opened the package, Howell could have foreseen that law enforcement personnel, rather than Bailey, would detonate the bomb. The jury heard testimony that on the day of Fulford's death, Howell was informed by a police dispatcher that the car that contained the bomb and was rented in his name would be impounded, yet he gave no warning of its contents. As this Court previously noted in relying upon this evidence to reject the challenge to the CCP aggravator in the direct appeal, Howell "had sufficient opportunity to formulate the intent that law enforcement personnel would be the bomb's intended victim." Howell, 707 So.2d at 682.
Accordingly, we conclude that the low probability of success, combined with the tremendous potential for alienating the *704 jury by blaming the trooper for his own death, fully justifies trial counsel's strategic decision to forego presentation of the alleged policy violation during the guilt phase as being well within the wide range of reasonable professional assistance.[3] The same lack of merit in an "intervening cause" defense based on the alleged policy violation leads us to conclude that Howell has also failed to establish prejudice under Strickland. Had counsel raised this defense, there is no probability, sufficient to undermine confidence in the outcome, of a different verdict. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
In regard to the penalty phase, Howell asserts that trial counsel was ineffective in declining to use the alleged policy violation in support of a nonstatutory mitigating factor that there was no intent to injure the trooper and that his death was unforeseeable. We conclude again that counsel made a reasonable strategic decision that introducing the evidence of the policy violation would have alienated the jury without contributing substantially to mitigation.
Concerning nonstatutory mitigation, we have stated that "[e]vidence is mitigating if, in fairness or in the totality of the defendant's life or character, it may be considered as extenuating or reducing the degree of moral culpability for the crime committed." Merck v. State, 763 So.2d 295, 298 (Fla.2000). In this case, the jury was made aware during the guilt phase that the bomb was intended for Tammie Bailey and not Trooper Fulford. Counsel could reasonably have concluded that evidence of the alleged policy violation would not have further reduced or extenuated Howell's moral culpability for the bomb's premature detonation. Further, on the question of whether the alleged policy violation made the death less foreseeable and therefore mitigated against imposition of the death penalty, Howell does not assert that he knew of the policy. Therefore, evidence of the alleged policy violation would not have appreciably changed the circumstances that led the jury to recommend death, the trial judge to impose death, and this Court to conclude, in rejecting the challenge to the law-enforcement aggravator in the direct appeal, that "Howell knew or could have reasonably foreseen that law enforcement personnel would search the vehicle and its contents and thereby detonate the bomb." Howell, 707 So.2d at 682.
Moreover, counsel made a reasonable strategic decision that any benefit in introducing the alleged policy violation during the penalty phase would have been outweighed by the perception that the defense was blaming Trooper Fulford for his own death. The jury in this case recommended death by a ten-to-two vote, and the trial court found five aggravating factors which it concluded far outweighed the two statutory mitigating factors, one of which was given little weight, and the three nonstatutory mitigators, two of which were given little weight or deemed inconsequential. See id. at 677. Indeed, as trial counsel testified at the evidentiary hearing, had he asserted the policy violation in advocating a nonstatutory mitigator, thus necessarily suggesting to some extent that the victim could be blamed for his own death, the recommendation of death might have been unanimous. Therefore, his performance *705 was not constitutionally deficient under Strickland. Even if counsel's decision to forego presentation of the alleged policy violation in the penalty phase could be viewed as unreasonable, we conclude that there is no probability that the decision affected the outcome of the penalty phase, and thus Howell's claim fails to satisfy the second prong of Strickland.
In Strickland, the Court stated:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
466 U.S. at 689, 104 S.Ct. 2052. Even in hindsight, trial counsel appears to have made a sound strategic decision not to introduce evidence, in either the guilt or penalty phase of Howell's capital trial, that Fulford may have violated FHP policy in opening the gift-wrapped package. As found by the trial court, counsel's decision "was appropriate given the probability that such an argument may have influenced the jury against the defendant." Accordingly, Howell has not overcome the presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and has not shown that the alleged deficiency affected the outcome of either phase of his capital trial. Because he has not satisfied either the deficiency or prejudice prong of Strickland, we conclude that the trial court did not err in denying this claim of ineffective assistance.

B. Ring Issue
Howell asserts that the United States Supreme Court decisions in Ring and Apprendi render Florida's capital sentencing statute, section 921.141, Florida Statutes (2003), unconstitutional. In Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1069, 123 S.Ct. 662, 154 L.Ed.2d 563 (2002), this Court denied relief under Ring. Subsequently, this Court has rejected postconviction challenges to section 921.141 that relied on Apprendi and Ring.. See, e.g., Jones v. State, 855 So.2d 611, 619 (Fla.2003); Wright v. State, 857 So.2d 861, 877-78 (Fla.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 1715, 158 L.Ed.2d 402 (2004); Chandler v. State, 848 So.2d 1031, 1034 n. 4 (Fla.2003).
In addition, the trial court in this case found that the murder was committed in the course of the felony of making, possessing, placing, or discharging a bomb, and the jury also unanimously found Howell guilty of this separate felony beyond a reasonable doubt. This Court has relied upon the same aggravator resting on contemporaneous convictions in rejecting Ring claims in several cases. See Lugo v. State, 845 So.2d 74, 119 n. 79 (Fla.), cert. denied, ___ U.S. ___, 124 S.Ct. 320, 157 L.Ed.2d 216 (2003); Jones v. State, 845 So.2d 55, 74 (Fla.2003); Banks v. State, 842 So.2d 788, 793 (Fla.2003). Howell likewise is not entitled to relief on this claim.

III. CONCLUSION
For the reasons explained above, we affirm the denial of Howell's motion for postconviction relief.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.
*706 CANTERO, J., concurs with an opinion, in which WELLS and BELL, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion.
CANTERO, J., concurring.
I concur in the majority opinion. Moreover, regarding Howell's claim that Florida's capital sentencing scheme violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I also would hold, for the reasons stated in my specially concurring opinion in Windom v. State, Nos. SC01-2706 & SC02-2142, ___ So.2d ___, 2004 WL 1057640 (Fla. May 6, 2004), that Ring does not apply retroactively.
WELLS and BELL, JJ., concur.
ANSTEAD, C.J., specially concurring.
I concur in the majority opinion in all respects except for its discussion of the decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] The jury had been instructed on unlawfully throwing, placing, or discharging a destructive device or bomb and drug trafficking as the predicate felonies for first-degree felony murder.
[2] The trial court found the following aggravating circumstances: (1) Howell knowingly created a great risk of death to many persons, (2) the murder was committed while Howell was unlawfully making, possessing, placing, or discharging a bomb, (3) the murder was committed to prevent lawful arrest, (4) the victim was a law enforcement officer engaged in official duties, and (5) the murder was cold, calculated, and premeditated (CCP). The court found the mitigating circumstances of (1) no significant criminal history (no assignment of weight), (2) the murder was committed while Howell was under the influence of extreme mental or emotional disturbance (little weight), (3) Howell served in and was honorably discharged from the military (little weight), (4) Howell behaved well as a pretrial detainee (no assignment of weight), and (5) Howell was a good family man (deemed inconsequential).
[3] Additionally, to the extent that Howell questions the sufficiency of the evidence to establish either premeditation or felony-murder, and reasserts the alleged conflict of interest based on the alleged death threat during the federal trial addressed in the direct appeal, these issues are procedurally barred on collateral review. See Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995) (holding that claims that were or could have been raised on direct appeal are procedurally barred from consideration in a rule 3.850 motion).