JORDAN, Circuit Judge,
concurring:
I concur in and join the Court’s opinion. Because Mr. Howell asserts that he would be the first person in Florida to be executed without having his federal habeas petition reviewed on the merits, I write separately. In my view, Mr. Howell would not have been entitled to relief even if the three claims raised in his petition received full federal habeas review.
I
Mr. Howell argues that his trial counsel, Frank Sheffield, Esq., rendered ineffective assistance because he failed to present an “intervening cause” defense at either the guilt or penalty phases of his trial. Mr. Howell contends that there was a reasonable probability that the jury would have acquitted him, convicted him of a lesser-ineluded-offense, or recommended a sentence of life imprisonment had Mr. Sheffield presented evidence that Trooper Fulford violated Florida Highway Patrol policy by opening the package containing the bomb-rigged microwave oven. According to Mr. Howell, Trooper Ful-ford’s actions were an unforeseeable, intervening cause that broke the chain of causation and either nullified specific intent entirely or mitigated culpability.
In order to prevail on this claim, Mr. Howell “must show that counsel’s performance was deficient” and “that the deficient performance prejudiced the defense.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). On a § 2254 petition, we conduct a deferential review of the state court’s adjudication of the performance and prejudice prongs of Strickland, such that relief is only warranted if the state court’s decision was “contrary to, or involved an unreasonable application of,” clearly established federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d). And our review of counsel’s performance garners an additional level of deference because “it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.” Stnckland, 466 U.S. at 689, 104 S.Ct. at 2065. See also Evans v. Sec’y, Dep’t ofCorr., 703 F.3d 1316, 1333-36 (11th Cir.2013) (Jordan, J., concurring) (explaining that under AEDPA “doubly deferential” review applies to the performance prong, but not the prejudice prong, of Strickland).
As to performance, Mr. Howell has failed to explain how Mr. Sheffield’s deci *1263 sion to forego an “intervening cause” defense amounts to anything more than a rational strategic choice made after careful consideration. For example, at the evi-dentiary hearing on Mr. Howell’s state post-conviction petition, Mr. Sheffield testified that he discussed that particular defense with Mr. Howell before trial, and that he ultimately came to the conclusion that it would likely backfire and hurt Mr. Howell’s chances for an acquittal. See Transcript of Evidentiary Hearing on Mr. Howell’s State Habeas Petition at 21 (“I made a judgment call that ... if I went in and tried to, in effect, blame Trooper Ful-ford for his own death that it would not be a viable defense; and, in fact, it would hurt Mr. Howell’s chances.”). Mr. Sheffield also explained that he declined to present this defense as a non-statutory mitigator during the penalty phase because he believed that it would be seen as an attempt to blame Trooper Fulford for his own death and “inflame the jury.” See id. at 24. These decisions were reasonable professional judgments under the circumstances of this case, and thus cannot rise to the level of constitutionally deficient performance. See Strickland, 466 U.S. at 690, 104 S.Ct. at 2066 (“[Sjtrategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.... ”).
With respect to prejudice, Mr. Howell conceded in his state post-conviction proceeding that Trooper Fulford’s actions “would not have been an intervening cause as a matter of law....” Howell v. State, 877 So.2d 697, 703 (Fla.2004). I agree with the Florida Supreme Court’s assessment that such a defense or theory, even if asserted, would have had a “low probability of success, combined with the tremendous potential for alienating the jury by blaming [Trooper Fulford] for his own death....” Id. at 703-04. Such a remote probability of success does not- meet the standard for prejudice articulated in Strickland. See 466 U.S. at 694, 104 S.Ct. at 2068 (“The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.”).
In sum, Mr. Howell has not established deficient performance or prejudice. This ineffective assistance of counsel claim therefore fails on the merits.
II
Mr. Howell contends that the penalty phase of his trial violated the Sixth Amendment because it was the trial court—with only a sentencing recommendation from the jury—which made the necessary findings of fact to impose the death penalty. He believes that this type of sentencing procedure, codified at Fla. Stat. § 921.141 (1993), is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Ring and Apprendi, however, are not applicable here. Mr. Howell’s sentencing occurred in 1994, years before Apprendi and Ring. And neither decision has been held to be retroactive. See Schriro v. Summerlin, 542 U.S. 348, 358,124 S.Ct. 2519, 2526, 159 L.Ed.2d 442 (2004) (“Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review.”); McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir.2001) (“Therefore, like these other circuits, we hold that the new constitutional rule of criminal procedure announced in Apprendi does not apply retroactively on collateral review.”).
Nevertheless, Mr. Howell contends that he should be able to rely on Apprendi and Ring because Blakely v. Washington, 542 *1264 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), expanded and clarified Apprendi and the Supreme Court has yet to decide whether Blakely is retroactive. Unfortunately for Mr. Howell, his Blakely argument is now foreclosed by our precedent. See Varela v. United States, 400 F.3d 864, 866-68 (11th Cir.2005) (holding that Blakely and United, States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), are not retroactive on collateral review). Thus, Mr. Howell is not entitled to relief on his Apprendi/Ring claim.
Ill
Mr. Howell asserts that he was denied effective assistance of counsel because Mr. Sheffield had a conflict of interest and was not removed as his attorney. When a defendant asserts a conflict of interest claim, we are not always required to conduct the two-step analysis under Strickland for ineffective assistance of counsel. See Burger v. Kemp, 483 U.S. 776, 783,107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987). Instead, prejudice can be presumed, but “only if a defendant demonstrates that his attorney actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer’s performance.” Id. (internal quotation marks omitted). In his petition, Mr. Howell cites to three separate occasions where he contends a conflict of interest arose. First, Mr. Sheffield allegedly had a conflict based upon allegations that an anonymous threat was made to his law office. Second, Mr. Howell and Mr. Sheffield disagreed over the defense’s strategy. Third, Mr. Sheffield consulted, during jury selection, with an attorney who represented one of Mr. Howell’s co-defendants. I address each of these purported conflicts below.
A
Initially, Mr. Sheffield was appointed to represent Mr. Howell in both his federal and state criminal prosecutions. In January of 1993, before the federal trial began, Mr. Sheffield’s wife claimed that she received a call at the office, in which the caller stated, “[I]f Paul Howell goes down, Mr. Sheffield is going down also.” Appellant’s Brief at 4. Mr. Sheffield contacted law enforcement officials, who began to investigate the claim. In addition, he petitioned to withdraw from Mr. Howell’s federal case, citing his concerns for his family’s safety and his difficulties in communicating with his client. The federal district court granted Mr. Sheffield’s request, and William Pfeiffer, Esq., was appointed in his place. Law enforcement later concluded, following an investigation into the matter, that no threatening call had actually been made to Mr. Sheffield’s office.
On March 15, 1993, Mr. Howell sent a letter to the state trial court. He claimed that Mr. Sheffield was ineffective due to a failure to communicate and a lack of trust. He also requested that the substitute federal counsel, Mr. Pfeiffer, be appointed as substitute counsel for his state death penalty case. Three days later, the state filed a motion to disqualify Mr. Sheffield. The motion referenced the threatening phone call and statements by Mr. Sheffield that Mr. Howell was being uncooperative. The trial court held a hearing “to determine whether or not there [was] reasonable cause to believe that [Mr. Sheffield was] not rendering effective assistance to [Mr. Howell].” Nelson v. State, 274 So.2d 256, 258 (Fla.App.1973) (recommending such an inquiry whenever a defendant makes it known that he or she desires to discharge appointed counsel).
At the hearing, Mr. Sheffield indicated that he had no outstanding safety concerns and was willing to continue representing Mr. Howell. He also informed the trial court about his experience with death penalty cases and pointed out that Mr. Pfeif- *1265 fer had never tried a capital case. The trial court then asked Mr. Howell for his views regarding Mr. Sheffield’s representation. Mr. Howell said that he did not want Mr. Sheffield to represent him because Mr. Sheffield had failed to share certain discovery matters with him. The trial court heard argument from all parties, and denied the motion to disqualify Mr. Sheffield based on its findings that (1) Mr. Sheffield was not removed from the federal case for lack of diligence; (2) there was no basis to question his performance in this case; and (3) Mr. Howell’s preferred replacement had no prior death penalty experience.
On June 4,1993, the state filed a motion for rehearing and attached the transcript from the hearing on Mr. Sheffield’s motion to withdraw in federal court. Those transcripts provided additional information about the alleged threat, Mr. Sheffield’s safety concerns at the time, and Mr. Sheffield’s belief that he could not ethically represent Mr. Howell in the federal case under those circumstances. The trial court held a hearing to discuss this additional evidence on November 19, 1993. At the hearing, Mr. Sheffield acknowledged that he had difficulties communicating with Mr. Howell on discovery matters in the federal case and that the alleged telephone threat led to his request to withdraw. But he stated that there were no such communication issues in the state case,[1] and he no longer had concerns for his safety. See Howell v. State, 707 So.2d 674, 678 (Fla. 1998) (quoting Mr. Sheffield’s statement at the hearing: “Since that time, Mr. Howell and I have communicated with one another. We are getting discovery. We have taken depositions.... [A]nd the problems that were occurring at that time in the federal case no longer exist.”).
Mr. Howell also testified at the hearing. He indicated that there were still concerns in the wake of the alleged phone threat because Mr. Howell’s family members were upset by insinuations that they may have orchestrated the whole thing. In response, Mr. Sheffield said that he did not share these concerns and that they would not impact his ability to represent Mr. Howell. Based on this testimony, the trial court found that (1) “[Mr. Howell] and Mr. Sheffield appeared] to be able to communicate,” (2) “Mr. Sheffield [was] probably as good [an attorney] as [Mr. Howell was] going to get,” and (3) “it would certainly be to [Mr. Howell’s] benefit to have [Mr. Sheffield] represent [him].” Id. at 679. The trial court did, however, give Mr. Howell an opportunity to respond, and Mr. Howell only said that he left the decision to the court. At that point, the trial court concluded that there was “no reason to disqualify Mr. Sheffield from representing Mr. Howell” and denied the state’s motion for rehearing. Id. That decision was later upheld by the Florida Supreme Court. See id. at 677-79.
In my view, the Florida Supreme Court’s decision on this issue was not an unreasonable application of Supreme Court precedent necessitating reversal under the applicable deferential standard. Habeas relief would only be warranted if Mr. Howell “demonstrate[d] that an actual conflict of interest existed that adversely affected [Mr. Sheffield’s] performance.” See Burger, 483 U.S. at 783, 107 S.Ct. at *1266 3120. And, on this record, Mr. Howell did not meet that burden. First, Mr. Howell did not rebut—clear and convincing evidence'—'the state court’s factual finding that it was “evident that any apprehension that [Mr.] Sheffield had concerning the bomb threat which had allegedly occurred some nine months before had dissipated.” Howell, 707 So.2d at 679. Mr. Howell attempted to challenge this finding by pointing to statements made by Mr. Sheffield at the time of the federal trial. But those statements cannot serve as clear and convincing evidence of Mr. Sheffield’s state of mind approximately nine months later, especially when Mr. Sheffield provided sworn testimony that he no longer had those concerns. Second, Mr. Howell cites to no evidence in the record that shows how the anonymous threat actually impacted Mr. Sheffield’s performance in the state capital case. He did not, for example, demonstrate that Mr. Sheffield made a choice between possible alternative courses of action that went against his own interests or that the choice was motivated by the anonymous phone threat. See, e.g., Smith v. White, 815 F.2d 1401, 1404 (11th Cir.1987) (articulating standard for establishing actual conflict of interest).
Instead, Mr. Howell relies on the presumption that, because the federal district court determined that Mr. Sheffield had a conflict of interest, the state trial court necessarily had to reach the same conclusion. See Habeas Corpus Petition [D.E. 2] at 19 (“This determination had already been made by the Federal court judge. It is preposterous to assume that the conflict was only in that courtroom and did not extend to the state court as well.”). But this argument, if anything, only establishes that there was a mere possibility of a conflict of interest in Mr. Howell’s state court case. And that does not suffice to make out a Sixth Amendment violation. See Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980) (“We hold that the possibility of conflict is insufficient to impugn a criminal conviction.”). Habeas relief, therefore, is not warranted on this claim.
B
In September of 1994, Mr. Sheffield filed a motion claiming that Mr. Howell was incompetent to proceed to trial because Mr. Sheffield believed that an insanity defense was Mr. Howell’s only viable option. Mr. Howell, however, did not want to pursue an insanity defense. At a hearing, the trial court concluded that Mr. Howell had competently indicated that he did not want to pursue an insanity defense, and that the decision on whether to do so was ultimately his to make. Mr. Sheffield agreed to abandon the insanity defense.
On the eve of trial, Mr. Howell wrote a letter to the trial court questioning Mr. Sheffield’s ability to provide effective representation due to irreconcilable differences stemming from Mr. Sheffield’s prior insistence on relying on an insanity defense. The trial court found that Mr. Howell’s concerns had already been addressed, Mr. Sheffield had agreed to adhere to Mr. Howell’s preference to forego an insanity defense, and, consequently, there was no basis to replace Mr. Sheffield. The case then proceeded to trial.
At trial, Mr. Howell again complained to the trial court about Mr. Sheffield’s performance. He believed that Mr. Sheffield was unprepared and ignored his suggestions. Mr. Sheffield responded that, in his professional judgment, it was not beneficial to challenge certain evidence, as Mr. Howell wished, because that evidence would later come in anyway. The trial court informed Mr. Howell that Mr. Sheffield’s approach was not uncommon in criminal cases and concluded that there was no need to appoint new counsel.
*1267 Mr. Howell argues that these disputes with Mr. Sheffield over defense strategy created a conflict of interest, which made it necessary for the trial court to appoint new counsel. I disagree. At most, Mr. Howell has shown that he was dissatisfied with Mr. Sheffield’s strategic and tactical decisions. But dissatisfaction alone is not sufficient to create a conflict of interest. See Blanco v. Wainmight, 507 So.2d 1377, 1383 (Fla.1987) (holding that “disagreements over whether to call certain witnesses” did not constitute a conflict of interest). Accord Oimen v. McCaughtry, 130 F.3d 809, 812 (7th Cir.1997) (“That is not a conflict of interest; it is a disagreement over strategy.”); United States v. Leggett, 81 F.3d 220, 227 (D.C.Cir.1996) (“[W]e are unpersuaded by [the petitioner’s] further attempt to style his disagreement with counsel over trial tactics as a ‘conflict of interest.’ ”); Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir.2007) (“We can find no clearly established Supreme Court precedent holding that [a disagreement over trial strategy] amounts to an actual conflict of interest.”); United States v. Jones, 662 F.3d 1018, 1026-27 (8th Cir. 2011) (“[The Sixth Amendment] is not violated by general dissatisfaction or disagreements over strategy....”).
Because these disagreements with Mr. Sheffield did not create a conflict of interest, Mr. Howell is only entitled to relief if he can establish prejudice under Strickland. See Burger, 483 U.S. at 783, 107 S.Ct. at 3120 (holding that prejudice is only presumed if there is proof of an actual conflict of interest). In my opinion, Mr. Howell has not met that burden. In his habeas petition, Mr. Howell does not explain how, if at all, these disagreements impacted his trial. There is no contention, for example, that Mr. Sheffield ignored Mr. Howell’s wishes and attempted to put on an unsuccessful insanity defense at trial. Or that Mr. Sheffield failed to object to the admission of prejudicial evidence that otherwise would have been excluded. Under these circumstances, the trial court did not err in declining to appoint new counsel. See United States v. Young, 482 F.2d 993, 995 (5th Cir.1973) (“Unless a Sixth Amendment violation is shown, whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is a matter committed to the sound discretion of the district court.”); Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir.1985) (“A defendant’s general loss of confidence or trust in his counsel, standing alone, is not sufficient [to establish good cause for substitution of counsel].”). Relief is not warranted on this claim.
C
During jury selection for Mr. Howell’s state trial, the state noted for the record that Mr. Sheffield had consulted with Robert Rand, Esq., the attorney for co-defendant Patrick Howell,[2] on jury challenges. Mr. Sheffield explained that he had sought Mr. Rand’s assistance because the state court declined to appoint a second lawyer to help him with Mr. Howell’s case. The trial court recognized the possible conflict of interest, and asked Mr. Howell for his views on the issue.[3] Mr. Howell stated that he had “no problem” with Mr. Rand’s involvement and that it was his desire that Mr. Rand be allowed to assist Mr. Sheffield. There is no indication that Mr. *1268 Rand’s assistance extended beyond jury selection.
As an initial matter, I note that the Florida Supreme Court failed to address this claim when it reviewed Mr. Howell’s state post-conviction petition. See Howell, 707 So.2d at 677-81. The claim, therefore, “is not subject to the deferential standard that applies under AEDPA” and “is reviewed de novo.” Cone v. Bell, 556 U.S. 449, 472, 129 S.Ct. 1769, 1784, 173 L.Ed.2d 701 (2009). See also 28 U.S.C. § 2254(d) (stating that AEDPA deference applies “with respect to any claim that was adjudicated on the merits in State court proceedings”).
Nevertheless, it is my view that, under these facts, Mr. Howell waived any claim to ineffective assistance of counsel based on Mr. Rand’s involvement in jury selection. See United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir.1993) (“A defendant may waive [his Sixth Amendment right] by choosing to proceed to trial with an attorney who has an adverse conflict of interest.”). The record shows that the trial court informed Mr. Howell of the potential conflict, made appropriate inquiries, and gave him the option to prevent Mr. Sheffield from consulting with Mr. Rand, which would have eliminated any conflict of interest. In response to that offer, Mr. Howell provided a waiver that was “clear, unequivocal, and unambiguous .... ” United States v. Petz, 764 F.2d 1390, 1392 (11th Cir.1985) (quoting United States v. Garcia, 517 F.2d 272, 278 (5th Cir.1975)). As a result, Mr. Howell cannot obtain relief on this claim.
IV
In sum, Mr. Howell would not be entitled to habeas relief on any of the claims raised in his federal petition,- even if they were adjudicated on the merits.

. Mr. Sheffield explained at the hearing that the improved attorney-client communication in the state capital case resulted from differences between the state and federal discovery procedures. Compare Fed.R.Crim.P. 16, with Fla. R.Crim. P. 3.220. In his view, the attorney-client relationship was strained in the federal case due to Mr. Howell’s perception that Mr. Sheffield was continuously served with requested discovery disclosures, but could not obtain certain desired discovery from the government because of the Jencks Act, 18 U.S.C. § 3500(a).

. Mr. Howell and Patrick Howell are brothers.

. The trial court found that Mr. Howell and his brother had differing interests and noted that the two men had previously gotten into a physical altercation in the courtroom. At the time of jury selection in Mr. Howell’s case, Patrick had entered into a plea agreement.