PER CURIAM.
Paul Augustus Howell, a prisoner under sentence and active warrant of death, appeals the trial court’s order summarily denying his successive motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851.[1] Howell was convicted and sentenced to death when the bomb he constructed, with the specific purpose of killing a witness, instead detonated and killed a Florida Highway Patrol Trooper. This Court upheld Howell’s convictions and death sentence on direct appeal in 1998, Howell v. State, 707 So.2d 674, 683 (Fla.1998), and affirmed the trial court’s denial of postconviction relief in 2004. Howell v. State, 877 So.2d 697, 705 (Fla.2004).
After the Governor signed a death warrant on January 18, 2013, and the execution was set for February 26, 2013, this Court entered a scheduling order providing a deadline by which Howell could file any successive motions for postconviction relief in the trial court. The trial court summarily denied Howell’s amended successive motion for postconviction relief by order dated February 4, 2013. Howell appeals that summary denial, raising three claims: (1) the trial court erred in denying his motion to remove appointed registry counsel due to a conflict of interest; (2) the trial court erred in denying his motions to appoint experts and investigators; and (3) Florida’s capital sentencing scheme is unconstitutional specifically with respect to lethal injection. In addition, Howell filed an application for stay of execution.
We have carefully reviewed the claims raised, as well as the prior history of this case, and for the reasons more fully set forth in this opinion, we affirm the trial court’s order denying postconviction relief and deny the motion for stay.
PROCEDURAL HISTORY
The facts of this case are set forth in Howell’s direct appeal of his conviction and death sentence:
In January of 1992, Howell constructed a bomb for the specific purpose of killing Tammie Bailey at her home in Marianna, Florida. Bailey, Howell, and Howell’s brother, Patrick, were part of a drug ring involving a number of other individuals in which drugs were obtained in Fort Lauderdale and then sold in Marianna, Florida. Howell intended to eliminate Bailey as a witness because she had knowledge that could link Howell and his brother to a prior murder. The bomb was placed inside a microwave oven and then the oven was gift-wrapped. Howell paid Lester Watson to drive and deliver the microwave to Bailey. Although he knew that Howell *766 had often made pipe bombs, Watson testified that he thought the microwave contained drugs. Howell rented a car for Watson to use for the trip. Watson was accompanied on the trip by Curtis Williams.
While traveling on 1-10 toward Ma-rianna, Watson was stopped by Trooper Jimmy Fulford for speeding. Fulford ran a registration check on the car and a license check on Watson, who gave the trooper a false name and birth date because he did not have a valid driver’s license. The radio dispatcher contacted the car rental company and was informed that Howell had rented the car. The dispatcher contacted Howell at his home in Fort Lauderdale, Florida, to determine whether the rental car had been stolen from him. Howell told the dispatcher that he had loaned the car to Watson but did not know that Watson would be traveling so far with the vehicle. Howell was informed by the dispatcher that Watson was going to be taken to the Jefferson County Jail. Howell did not give any warning to the dispatcher regarding the bomb.
Deputies Harrell and Blount of the Jefferson County Sheriff’s Department arrived at the scene and Watson gave them permission to search the vehicle. Trooper Fulford and the deputies observed the gift-wrapped microwave in the trunk of the car. Watson was arrested for speeding and driving without a valid driver’s license and was transported, along with Williams, to the jail by Deputy Blount. Deputy Harrell also proceeded to the jail, leaving Trooper Fulford alone with the rental car. Shortly thereafter, a massive explosion took place at the scene. Testimony presented at Howell’s trial by the State’s explosives expert indicated that Trooper Fulford had been holding the microwave in his hands when the bomb went off. Trooper Fulford died instantly due to the massive trauma caused by the explosion.
[[Image here]]
The jury found Howell guilty of first-degree murder and of making, possessing, placing, or discharging a destructive device or bomb. The jury also returned a special verdict finding that the charge of first-degree murder was established by both proof of premeditated design and felony murder. At the penalty phase, the jury recommended death by a vote of ten to two. The trial court found that the following aggravators applied to the murder: (1) Howell knowingly created a great risk of death to many persons; (2) the murder was committed while Howell was engaged in the unlawful making, possessing, placing, or discharging of a destructive device or bomb; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest; (4) the victim was a law enforcement officer engaged in the performance of his official duties; and (5) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). The trial court also found that the following statutory and nonstatutory mitigators applied: (1) Howell had no significant history of pri- or criminal activity; (2) the murder was committed while Howell was under the influence of extreme mental or emotional disturbance (given little weight); (3) Howell had served in the military and received an honorable discharge (given little weight); (4) Howell displayed good behavior as a pretrial detainee; and (5) Howell was a good family man (deemed inconsequential). The trial court found that the enormity of the proved aggravating circumstances far outweighed the mitigating circumstances and imposed *767 the death penalty in conformance with the jury’s recommendation that Howell be sentenced to death. The trial court declined to impose a sentence on Howell’s conviction for constructing the bomb because this charge and the murder charge both arose from a single underlying offense.
Howell, 707 So.2d at 676-77.
On direct appeal to this Court, Howell, represented by attorney Robert A. Nor-gard, raised nine issues, which we rejected.[2] In his only guilt-phase claim, Howell challenged the trial court’s refusal to appoint different defense counsel for him and its refusal to appoint a second attorney. Specifically as to the trial court’s refusal to appoint different defense counsel, the State had filed a motion to disqualify defense counsel Frank Sheffield from the state court proceedings, stating that Howell had similar charges pending in both state court and federal court and Sheffield had been removed as defense counsel in the federal proceedings and was replaced by attorney William Pfeiffer. Id. at 677. The trial judge held a hearing and found that Sheffield requested to be removed as counsel in the federal proceedings because Sheffield’s wife received a threat directed to Sheffield that if “Howell goes down, Mr. Sheffield is going down too.” Id. at 678. However, at the hearing, Sheffield stated that he was still willing to continue as Howell’s counsel in the state proceedings and had conducted “tons and tons” of discovery. Id. at 677. In addition, he had significant experience in handling capital cases. Id.
The trial court denied the State’s motion to disqualify, finding that Sheffield was not removed in the federal proceedings based on a lack of diligence, there was no basis to question Sheffield’s performance in the state proceedings, and Pfeiffer did not have any experience handling a capital case. Id. at 677-78. The State filed a motion for rehearing and attached the transcripts from the federal proceedings, asserting that the transcripts supported a possible conflict between Sheffield and Howell based on the threat Sheffield’s wife received. Id. at 678. Specifically, although the threat to Sheffield was investigated, it could not be substantiated through telephone records, leading to the possibility that Sheffield’s wife may have falsified the threat. Id. When the trial court attempted to inquire from Howell as to whether there was any conflict or problem between Sheffield and Howell, Howell replied, “the [cjourt can determine it.” Id. at 679.
On review, this Court first determined that there was no abuse of discretion in not disqualifying Sheffield from representation:
It is evident that any apprehension that Sheffield had concerning the bomb threat which had allegedly occurred *768 some nine months before had dissipated. When Howell was asked concerning his position on the matter, he deferred to the court’s judgment. From this record, we cannot say that the court abused its discretion in not disqualifying Sheffield from representing defendant. The State had made the motion out of an abundance of caution, and at no time during the hearing before Judge Stein-meyer did Howell ask that Sheffield be removed as his attorney.

Id.

Further, as to Howell’s claim that he should have been provided with a second attorney or been permitted to replace Sheffield as his attorney based on complaints about Sheffield’s representation, the Court noted that when a defendant complains about the representation of counsel, the judge must make a sufficient inquiry into the complaint, but recognized that this inquiry “can only be as specific as the defendant’s complaint.” Id. at 680. The Court concluded that the trial court made an adequate inquiry into Howell’s complaints of ineffectiveness, properly determined them to be without merit, and did not abuse its discretion in denying the State’s motion to disqualify. Id. In addition, as to Howell’s motion to have a second attorney appointed, the Court held that the trial court did not abuse its discretion in denying that motion. Id.
Howell next challenged on direct appeal whether the trial court properly found numerous aggravators. Howell first alleged that the trial court erred in finding that Howell had knowingly created a great risk to many persons because Trooper Fulford was alone when the bomb exploded. Id. This Court rejected that challenge:
As pointed out by the trial court, if the bomb Howell constructed had reached its intended destination, Tammie Bailey, Bailey’s child, Lester Watson, Yolanda McAllister, and the mother and two children residing in the adjoining apartment would have been potentially at risk of death. Furthermore, even though the victim Howell originally targeted was not killed, this case involved a sophisticated and lethal bomb of great magnitude transported on major interstate highways all the way from Fort Lauder-dale to Marianna, Florida. That fortuitously only one person was killed does not change the fact that Howell knew that the bomb he constructed and caused to be transported through the length and breadth of Florida had the capacity to kill a “great number of people” as we have previously defined that term. Based on the expert testimony presented regarding the violence of the explosion and the fire that it caused, there was a likelihood or high probability that the occupants of any vehicles driving on 1-10 in the near vicinity at the time of the explosion were at risk of death.
Id. at 681. Thus, this Court held that the trial court did not err in finding that the defendant knowingly created an immediate and present risk of death to many persons. Id.
Next, Howell asserted that the trial court erred in finding that the murder was committed to avoid or prevent arrest. This Court detailed the evidence presented at trial that established the intended victim, Bailey, was involved in the cover-up of another murder and that Howell had asked a person to transport a package to “some girls” who had “snitched” on his brother, indicating with gestures that the package contained a bomb. Id. The Court then found that the concept of “transferred intent” was applicable to apply the avoid arrest aggravator to Trooper Fulford. Id. at 682.
*769 Howell also challenged CCP, asserting that he had no intent to Mil Trooper Ful-ford and that transferred intent should not apply to the CCP aggravator. This Court disagreed, holding that the heightened premeditation necessary for CCP does not have to be directed at the specific victim and this Court reviews the level of planning, not the success of the plan. Id. Moreover, here, Howell was informed that law enforcement officers took custody of the car with the bomb, and Howell chose not to warn them of the existence of the bomb. Id.
Along similar grounds, Howell asserted that the trial court erred in finding the aggravator that the victim was a law enforcement officer engaged in the performance of his official duties because Howell did not intend to kill an officer. The Court rejected this claim, noting again that while Howell had been informed that law enforcement officers had custody of the car, he did not warn them about the bomb and could have reasonably foreseen that an officer may search the car and detonate the bomb. Id.
Finally, Howell asserted that the death sentence was disproportionate, relying primarily on the fact that Lester Watson and Patrick Howell (his codefendants) did not receive death sentences. This Court held that disparate treatment is permissible where one defendant is more culpable and that the evidence supported that Howell had greater culpability. Id. at 682-83. Thus, this Court affirmed his convictions and sentence of death. Id. at 683. Howell subsequently filed a petition for writ of certiorari in the United States Supreme Court, which was denied. Howell v. Florida, 524 U.S. 958, 118 S.Ct. 2381, 141 L.Ed.2d 747 (1998).
Howell’s initial postconviction registry counsel, Danielle Jorden, was appointed by the trial court. After seeMng an extension of time to file the postconviction motion from the Florida Supreme Court on March 19, 1999, Jorden filed the state postconvietion motion on August 30, 1999, and subsequently was allowed to withdraw from representation. Clyde Taylor, Jr., was appointed as registry counsel on March 2, 2000, to represent Howell and filed an amended motion that raised eighteen claims, but later conceded several were moot and would be withdrawn.[3] After conducting an evidentiary hearing, the postconviction court subsequently denied the motion for postconviction relief.
Howell appealed the denial of relief, raising only two claims; “(1) whether trial *770 counsel was ineffective in both the guilt and penalty phases in failing to assert that the trooper’s violation of PHP procedures in opening the package containing the bomb constituted an intervening cause, and (2) whether Florida’s death penalty is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).” Howell, 877 So.2d at 700. Specifically, Howell asserted that counsel was ineffective for failing to argue that Trooper Fulford contributed to his own demise when he opened the package because this was a violation of a Florida Highway Patrol policy statement that directed officers not to open items that were securely wrapped — a claim that could have supported both a defense of intervening cause during the guilt phase and supported nonstatutory mitigation during the penalty phase. Id. at 702. However, evidence from the evidentiary hearing demonstrated that trial counsel had considered this defense and concluded that it was not viable and, as a strategic matter, would have only inflamed the jury. Id. at 702-03.
This Court rejected Howell’s ineffectiveness claim, agreeing with the trial court that the defense was not viable because death was clearly a foreseeable result of placing a bomb in a microwave and setting it to explode when the microwave door was opened, as “it was almost certain that Howell’s actions would result in the death of someone, if not his intended victim.” Id. at 703. As to the portion of the claim involving the guilt phase, this Court concluded “the low probability of success, combined with the tremendous potential for alienating the jury by blaming the trooper for his own death, fully justifies trial counsel’s strategic decision to forego presentation of the alleged policy violation during the guilt phase as being well within the wide range of reasonable professional assistance.” Id. at 703-04 (footnote omitted).
This Court made a similar holding as to whether counsel was ineffective in failing to use the alleged policy violation in support of a nonstatutory mitigator, concluding that “counsel made a reasonable strategic decision that introducing the evidence of the policy violation would have alienated the jury without contributing substantially to mitigation.” Id. at 704.
The Court also rejected the Ring claim, relying on prior precedent denying the claim and based on the fact that in this case, the trial court “found that the murder was committed in the course of the felony of making, possessing, placing, or discharging a bomb, and the jury also unanimously found Howell guilty of this separate felony beyond a reasonable doubt.” Id. at 705. Accordingly, this Court affirmed the postconviction court’s denial of relief. Id. This Court denied rehearing on June 25, 2004.
Howell filed a petition for writ of habeas corpus in the federal trial court, raising three arguments that this Court had previously rejected: (1) trial counsel was ineffective for not presenting the contributory negligence of the victim as a defense in the guilt phase and as nonstatutory mitigation in the penalty phase; (2) Florida’s death penalty statute violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (3) Howell was denied the effective assistance of trial counsel when the trial court denied the motion to remove counsel based on a conflict of interest after trial counsel’s wife received a threat. The federal trial court dismissed the petition as untimely. Howell, through appointed registry counsel, Clyde Taylor, Jr., and Baya Harrison, III, filed an appeal to the Eleventh Circuit Court of Appeals, arguing that he was entitled to equitable tolling *771 under 28 U.S.C. § 2244(d)(2), because the private attorney appointed to represent Howell during his state postconviction proceedings failed to file a petition for federal habeas relief within the time limit. Howell v. Crosby, 415 F.3d 1250, 1251 (11th Cir. 2005). The Eleventh Circuit affirmed the dismissal, holding that in order to rely on equitable tolling, Howell was required to show “extraordinary circumstances that are both beyond his control and unavoidable even with diligence” — a standard that he did not meet. Id. at 1251-52. Specifically, the Eleventh Circuit concluded that “Howell was not a victim of extraordinary circumstances beyond his control, and the district court did not commit clear error when it determined that Howell was not diligent.” Id. at 1252.
In addition to these proceedings involving Howell’s death sentence imposed in state court, Howell and numerous other codefendants were charged and convicted in federal proceedings based on the activities of an active drug ring engaged in obtaining drugs in Fort Lauderdale and then selling them in Marianna. Howell or members of this drug ring were also suspected of committing another murder. See United States v. Mothersill, 87 F.3d 1214, 1217 (11th Cir.1996) (detailing the facts of the “elaborate drug operation” involved in the federal drug conspiracy and racketeering prosecution and detailing facts of the prior murder).
ANALYSIS
Florida Rule of Criminal Procedure 3.851 provides the pleading requirements that govern Howell’s successive postcon-viction motion. Fla. R.Crim. P. 3.851(e)(2)(a). In particular, a motion for postconviction relief must state the nature of the relief the defendant seeks, Fla. R.Crim. P. 3.851(e)(1)(C), and must include “a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought.” Fla. R.Crim. P. 3.851(e)(1)(D).
In his appeal to this Court, Howell argues as follows: (1) the trial court erred by denying Howell’s motion to remove appointed registry counsel due to a conflict of interest; (2) the trial court erred by denying Howell’s motion to appoint a mitigation specialist and fact investigator and his motion to appoint a neuropsychologist and forensic psychologist; and (3) the trial court erred in denying his postconviction claim that Florida’s capital sentencing scheme is unconstitutional. In addition, Howell has also filed an application for stay of execution. We address each claim below.
Motion to Remove Appointed Registry Counsel
Howell first claims that the trial court erred in denying a motion to remove appointed registry counsel because registry counsel Taylor had a “conflict of interest” in continuing to represent Howell. Specifically, the record shows that another attorney, Jorden, initially represented Howell during the postconviction proceedings, but requested to withdraw from representation after missing the deadline in which to file a federal petition for writ of habeas corpus under 28 U.S.C. § 2254.[4] The trial judge granted Jorden’s request to withdraw and then appointed Taylor to represent Howell during the initial postconviction proceedings. Taylor has continued to serve as *772 registry counsel for Howell and still represents Howell in these proceedings.
After the Governor signed the death warrant for Howell, the trial court held an initial case management hearing, at which point Taylor informed the court that he may have a conflict of interest and requested more time in which to determine whether a conflict existed. Although the federal deadline was missed before Taylor was appointed to represent Howell, Taylor informed the court that because he shared office space with the former counsel who missed the federal deadline, he was uncertain -whether he might have had any knowledge of those circumstances and therefore expressed concern about whether he should continue to represent Howell. Taylor never moved to withdraw, but at the State’s suggestion, the trial court appointed Harrison, who had formerly assisted Taylor in the posteonvietion proceedings, as co-counsel to assist in representing Howell. Registry counsel then filed a successive motion for posteonvietion relief.
On January 30, 2018, Michael Ufferman and Sonya Rudenstine (retained counsel) filed a notice of appearance, informing the court that they had been privately retained to represent Howell. In addition, retained counsel filed a motion to substitute themselves as counsel for Howell. At a hearing the next day, the trial court accepted their notice of appearance, considering Ufferman and Rudenstine counsel of record. However, the court denied the motion for substitution of counsel. Retained counsel Ufferman and Rudenstine subsequently filed a motion to remove appointed registry counsel Taylor and Harrison based on the conflict of interest, asserting that Taylor shared office space with the posteonvietion attorney who missed the federal deadline and that retained counsel had concerns that registry counsel may not be rendering effective assistance of counsel. In addition, retained counsel asserted that they may raise claims pursuant to Martinez v. Ryan, — U.S.-, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), which would involve whether posteonvietion counsel failed to raise certain claims during the initial-review collateral proceedings, and appointed registry counsel would not be able to advise Howell on such claims or pursue those claims based on this conflict of interest. Retained counsel also argued that they may need to call Taylor as a witness regarding the missed federal deadline.
The trial court subsequently denied the motion to remove appointed registry counsel Taylor and Harrison, stressing that the issue before the court was not whether retained counsel Ufferman and Rudenstine could appear as counsel of record, but whether the court should require appointed registry counsel to withdraw. The trial court then reasoned that retained counsel read Martinez too broadly and recognized that this Court has already determined that Martinez does not provide a new cause of action in state court proceedings. In denying the motion, the trial court reasoned that retained counsel did not show good cause for removal of appointed registry counsel and that registry counsel possessed important familiarity with the facts, so Howell would be better served by having all four attorneys working on the case, given the expedited schedule. The trial court recognized various practical concerns, including that retained counsel appeared at a late stage in the litigation, an expedited schedule had been ordered, and appointed registry counsel had “significant knowledge of this case.”
As this Court recognized in Weaver v. State, 894 So.2d 178, 187 (Fla.2004), “[a] court’s decision involving withdrawal or discharge of counsel is subject to review for abuse of discretion.” On the *773 other hand, when reviewing whether a defendant’s counsel labored under a conflict, this Court applies a “mixed standard of review, deferring to the lower court’s factual findings but reviewing its ultimate legal conclusions de novo.” See State v. Larzelere, 979 So.2d 195, 208 (Fla.2008).
Howell contends the trial court’s ruling was in error based on four reasons. The State argues that as to two of the grounds for disqualifying appointed registry counsel based on Taylor’s potential knowledge of the missed federal deadline, those issues “will arise, if at all, in the future in federal court, as part of the federal litigation.” Further, the State contends that Howell is attempting to raise an ineffective assistance of counsel claim in the guise of a “conflict of interest claim.” Lastly, the State suggests that Howell is actually raising a “counsel of choice claim, not a conflict of interest claim.” We address each argument raised by Howell.
First, Howell argues that he has chosen retained counsel to represent him, and because he has a right to counsel of his choice, the trial court erred in denying his motion to remove appointed registry counsel. While the State contends that there is no Sixth Amendment right to counsel of choice, we conclude that Howell has not even demonstrated that he was denied his choice of counsel at all. The issue before the Court in this proceeding is not whether the trial court erred in denying retained counsel from representing Howell, but whether the trial court erred in denying the motion to remove appointed registry counsel.
In reality, the trial court permitted Howell to exercise his choice of counsel by recognizing Ufferman and Rudenstine as counsel of record in this case, and since retained counsel filed their notice of appearance, they have filed motions, conducted discovery, and even filed the current appellate briefs with this Court. Howell fails to explain how he is being denied counsel of his choice in light of the fact that his retained attorneys are actively pursuing his case but are simply limited in their options because they were not retained until after the death warrant was signed.
Second, Howell contends that the trial court erred in denying the motion to remove appointed registry counsel because appointed registry counsel Taylor may have to serve as a witness in upcoming federal habeas proceedings. In support, Howell cites to rule 4r-3.7(a) of the Florida Rules of Professional Conduct. Rule 4-3.7(a), however, does not require a trial court to remove an attorney when that attorney may be a potential witness in a different case in a different forum when that litigation has not yet commenced. We therefore conclude that the trial court did not abuse its discretion in refusing to remove Taylor as registry counsel on that basis because it is not within the scope of this Court’s review to address any claims Howell may attempt to raise in the federal forum.
Indeed, retained counsel’s arguments regarding the alleged “conflict of interest” are primarily directed toward future federal proceedings and the possibility of raising claims based on Martinez and Holland v. Florida, -U.S.-, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), in that forum. Importantly, Howell has not specifically raised any viable new allegation that appointed registry counsel failed to bring forth in the state court proceedings due to any “conflict of interest.”
Third, Howell contends that the trial court erred in its ruling because in Martinez, 132 S.Ct. at 1320, the United States Supreme Court recognized an exception to the procedural bar rule that would have *774 otherwise prevented an ineffective assistance of trial counsel claim from being raised in a subsequent proceeding where postconviction counsel failed to raise such a claim with the trial court in the initial-review collateral proceedings. Because appointed registry counsel served as Howell’s counsel in his initial-review collateral proceedings, retained counsel argue that appointed registry counsel have a conflict of interest with respect to advising Howell of a potential Martinez claim.
However, Martinez addresses a very narrow issue: whether a federal court reviewing a petition filed under 28 U.S.C. § 2254 can excuse the procedural default that occurred during state proceedings where a defendant was denied his right to effective assistance of trial counsel and has been unable to raise this claim in the state proceedings because postconviction counsel rendered ineffective assistance in failing to raise the claim in the initial-review collateral proceedings. Id. As this Court has made clear, though, Martinez does not provide an independent basis for relief in state court proceedings.
In Gore v. State, 91 So.3d 769 (Fla.), cert. denied, — U.S.-, 132 S.Ct. 1904, 182 L.Ed.2d 661 (2012), this Court had the opportunity to review Martinez and its impact on state proceedings and analyzed this claim as follows:
Gore asserts that the recent decision of the United States Supreme Court in Martinez, 132 S.Ct. 1309, creates a new and independent cause of action for ineffective assistance of collateral counsel in our state courts system. While the decision in Martinez does contain expansive language, a proper analysis reveals that the Supreme Court specifically declined to address the issue of whether a constitutional right to effective assistance of collateral counsel exists:
While petitioner frames the question in this case as a constitutional one, a more narrow, but still dispositive, formulation is whether a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney’s errors in an initial-review collateral proceeding.
Id. at 1313. Even Justice Scalia in his dissent acknowledged that the majority chose to evade this issue. See id. at 1326 (Scalia, J., dissenting) (noting that the reframing of the issue “avoid[ed] the Court’s need to confront the established rule that there is no right to counsel in collateral proceedings”). It appears that Martinez is directed toward federal habeas proceedings and is designed and intended to address issues that arise in that context.
Gore, 91 So.3d at 777-78. Accordingly, we have already rejected the claim that Martinez can be used in state proceedings.
Moreover, while Howell contends that appointed registry counsel have a conflict of interest because they provided ineffective assistance of counsel, this Court has repeatedly held that claims of ineffective assistance of postconviction counsel are not cognizable. See Gore v. State, 24 So.3d 1, 16 (Fla.2009); Kokal v. State, 901 So.2d 766, 777 (Fla.2005); Foster v. State, 810 So.2d 910, 917 (Fla.2002); King v. State, 808 So.2d 1237, 1245 (Fla.2002); Waterhouse v. State, 792 So.2d 1176, 1193 (Fla.2001); Lambrix v. State, 698 So.2d 247, 248 (Fla.1996).
Further, as to the viability of any claims that may arise in federal court proceedings, those claims have not yet been raised and are not before this Court. With respect to whether Martinez provides an independent basis for removing counsel in the state court proceedings, we conclude *775 that under the circumstances of this case there is no basis to remove appointed registry counsel. In Martinez, 132 S.Ct. at 1315, the defendant had been unable to raise the denial of his right to effective assistance of trial counsel until federal proceedings began, based on the unique facts and circumstances of the state court proceedings in that case. Here, however, the federal habeas petition that Howell originally filed raised only claims that were fully litigated in previous state court proceedings, and this Court has found those claims to be without merit. Thus, Howell’s registry counsel litigated his claims in state court both on direct appeal and in postconviction proceedings, and counsel has therefore shown no legal basis for removing appointed registry counsel from state court proceedings based on Martinez.
Fourth, Howell argues that the trial court erred in its ruling because appointed registry counsel were insufficiently prepared to represent Howell in the warrant proceedings. However, as the trial court correctly recognized and we have observed, the issue before this Court is not whether retained counsel Ufferman and Rudenstine may join the case as counsel of record, but whether the trial court was required to remove the appointed registry counsel. In its written order denying the motion to remove appointed registry counsel, the trial court noted that it was required to make a finding of good cause to allow registry counsel to withdraw under the registry statute, citing section 27.710(3), Florida Statutes (2012).
Critical to our analysis here, retained counsel have not specifically identified any non-procedurally barred claim that they could have, but were unable to, raise in the trial court and to this Court, based on appointed registry counsel’s alleged inadequate representation in this proceeding. Rather, the claim of retained counsel appears to be that they have not had adequate time to review the record, including the public records, to determine what additional claims could be raised. In this case, however, Howell is under an active death warrant, and we conclude that there is no basis for the trial court to have removed the only counsel who were familiar "with this case.
As to this last point, this Court emphasizes that if Howell was unhappy with the representation of his registry counsel Taylor, he had from 2000 until the time that the death warrant was signed to seek other counsel. To the extent Howell alleges that registry counsel should have raised issues relating to mitigation in the postcon-viction proceedings, these claims are nothing more than a speculative attempt to raise an assertion of ineffective assistance of postconviction counsel at this late time. If this Court were to allow the last minute substitution of counsel to create a situation in which the entire case could be reliti-gated at the time the death warrant was signed, as the State correctly points out, this could become a standard delay tactic in any death warrant case. While this Court has an obligation to ensure that the death penalty is administered with integrity and within constitutional boundaries, this Court will also not condone tactics that would delay a case where all proceedings in this Court were completed in 2004.
Because Howell has not shown that appointed registry counsel have a conflict of interest that would have required the removal of registry counsel in the warrant proceedings or otherwise demonstrated that the trial court abused its discretion in denying the motion to remove appointed registry counsel, we deny this claim.
Denial of the Motions for the Appointment of Investigators and Experts
In his next claim, Howell asserts that the trial court erred in denying his *776 motions for the appointment of investigators and experts. Specifically, the record shows that retained counsel filed an ex parte motion to retain a mitigation specialist and fact investigator on February 1, 2013. On February 5, retained counsel filed an ex parte motion to appoint a neu-ropsychologist and a forensic psychologist, asserting that although a mental health evaluation was conducted prior to trial, the evaluation was in conjunction with Howell’s federal conspiracy case and was under “pretty severe time constraints as the federal trial stopped [proceedings] to do [it] as quickly as possible.” In addition, retained counsel alleged that neither a forensic psychologist nor a neuropsychologist have undertaken a competent examination of Howell, both of which are critical to a full assessment of mitigating circumstances in this case.
The trial court summarily denied both of these motions. This Court reviews the denial of a motion for appointment of experts for an abuse of discretion. See Marshall v. Crosby, 911 So.2d 1129, 1133 (Fla.2005) (“A trial court’s ruling on a motion for appointment of experts will be affirmed on appeal in the absence of an abuse of discretion.”). We conclude that Howell has failed to show how the trial court abused its discretion. In particular, Howell has not alleged that the experts he sought to obtain could assist in any viable state claim. Moreover, sections 27.711(5) and (6) place monetary limits on payments for investigators and experts, and counsel must demonstrate that “extraordinary circumstances” are present in order to exceed the cap for compensating expert witnesses. § 27.711, Fla. Stat. (2012). In this case, however, counsel did not address whether these limits were previously reached and did not attempt to show extraordinary circumstances.
As to both of these motions, retained counsel made no attempt at this stage of the proceedings, on the eve of a death warrant, to demonstrate that there was any need for the appointment of experts. In other words, the motion was not linked to any pending claim or any assertion that a non-procedurally barred claim could even be raised. There is no allegation that there is any doubt as to Howell’s guilt, and any attempt to appoint a mitigation expert almost two decades after his initial trial took place and almost a decade after the completion of his initial postconviction proceedings is long since barred. Thus, we conclude that the trial court did not abuse its discretion in denying these motions.
Lethal Injection Protocol
In his third contention, Howell asserts that the trial court erred in denying the postconviction motion, which raised a singular claim pertaining to whether Florida’s capital sentencing scheme is unconstitutional. Specifically, in Howell’s successive motion for postconviction relief, appointed registry counsel raised one claim: the lethal injection protocol constitutes cruel and unusual punishment and creates a substantial risk of serious harm to Howell. Howell requested an eviden-tiary hearing, noting that “the defendant is the first African-American inmate that is subject to receiving pentobarbital, his medical history is different than those executed, his body weight and blood-type is different, and he is significantly younger than any of those previously put to death using pentobarbital.” On January 31, 2013, counsel filed an amended motion for postconviction relief, stating that “Howell is allergic to aspirin, has a long history of ulcers, frequently suffers from extreme headaches and dizziness, continues to experience numbing pain radiating down his leg, and experienced bouts of insomnia during his incarceration.”
*777 During a hearing, appointed registry counsel Taylor informed the trial court that he did not have evidence to present during an evidentiary hearing. At this same hearing, the judge recognized retained counsel Ufferman and Rudenstine as counsel of record and asked whether retained counsel planned on relitigating any issues. As to the lethal injection claim, Ufferman informed the court that retained counsel had “no basis to believe that we would be relitigating that, but I can’t affirmatively tell you that we won’t, depending oh what we discover going forward.” After this representation, counsel did not inform the court that new evidence had been discovered.
The trial court denied the motion for postconviction relief, which raised only whether lethal injection constituted cruel and unusual punishment. In support, the trial court relied on this Court’s prior precedent and held that after careful examination of the specific allegations raised, Howell was not raising any new scientific evidence and that based on the allegations raised, Howell was not entitled to relief.
We conclude that the trial court did not err in its ruling. This Court previously set forth the standard of review for a summary denial of a postconviction motion as follows:
An evidentiary hearing on a rule 8.851 motion should be held whenever the movant makes a facially sufficient claim that requires a factual determination. However, postconviction claims may be summarily denied when they are legally insufficient, should have been brought on direct appeal, or are positively refuted by the record. Because the circuit court denied [the] successive rule 3.851 motion without holding an evidentiary hearing, we review the circuit court’s decision de novo, accepting the movant’s factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief.
Pardo v. State, 108 So.3d 558 (Fla.) (internal quotations and citations omitted), cert. denied, — U.S.-, 133 S.Ct. 815, 184 L.Ed.2d 602 (2012). In terms of raising a successful Eighth Amendment challenge, a defendant must demonstrate
that the conditions presenting the risk must be sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers. That is, there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment. An inmate faces a heavy burden to show that lethal injection procedures violate the Eighth Amendment. A defendant cannot simply rely on conjecture and speculation.
Id. at 562 (internal quotations, emphasis, and citations omitted). In Pardo, this Court considered and rejected whether the current lethal injection protocol is unconstitutional. Id. Howell is not relying on any new evidence or new claims that this Court has not considered.
Regarding his as-applied challenge to the lethal injection protocol, Howell has not raised a colorable claim that his asserted medical conditions would interfere with the administration of the drugs set forth in the lethal injection protocol. See Troy v. State, 57 So.3d 828, 839-40 (Fla.2011). As the State asserts, the Department of Corrections is familiar with Howell’s medical condition and medical records as he has been under its custody for the past eighteen years. This Court’s “role is not to micromanage the executive branch in fulfilling its own duties relating *778 to executions.” Lightbourne v. McCollum, 969 So.2d 326, 351 (Fla.2007). Accordingly, the trial court did not err in denying Howell’s motion for postconviction relief as to his lethal injection claim.
Application for Stay of Execution
Howell, through his retained counsel, also filed an Application for Stay of Execution on February 14, 2013, asserting that appointed registry counsel have a conflict of interest based on the missed federal deadline and the inadequate representation in the initial postconviction proceedings, that appointed registry counsel were unprepared to represent Howell in the warrant proceedings, and that retained counsel should be permitted time to review the thousands of pages of repository records and the guilt-phase transcripts.
Retained counsel assert that they intend to challenge the missed federal deadline under Holland and may file a claim under Martinez in subsequent federal proceedings because appointed registry counsel Taylor now states he “may have overlooked possible claims cognizable under rule 3.851,” including ineffective assistance of counsel claims. However, as we have already addressed above, the federal habe-as petition that Howell originally filed raised only claims that were fully litigated in state court proceedings and found to be without merit. The relief that counsel is now seeking, on the eve of an execution, is to permit retained counsel to raise entirely new claims outside of an initial-review collateral proceeding — something for which counsel has not shown any legal basis.
In Martinez, the United States Supreme Court explicitly reiterated its holding in Coleman v. Thompson, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), that an attorney’s negligence in a postcon-viction proceeding does not establish cause to excuse a procedural default, but Martinez would provide a limited and narrow exception for cases involving initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. Here, however, retained counsel claim ineffectiveness that began at trial and continued through multiple attorneys until the present when the death warrant was signed in 2013.
Howell, through his retained attorneys, asserts that “since undersigned counsel were hired, they have discovered numerous factors that should alarm the Court in moving forward with these proceedings without providing Mr. Howell’s counsel of choice the same amount of time to represent him in circuit court that appointed counsel were afforded.” However, other than claims regarding the missing of the federal habeas deadline and assertions that more mitigation should have been presented at trial, Howell provides no basis aside from speculation for this Court to be alarmed about allowing the death warrant to be carried out.
In order to grant a stay of execution at this stage, Howell must show that there are substantial grounds upon which relief might be granted. Buenoano v. State, 708 So.2d 941, 951 (Fla.1998). We conclude that this showing has not been made. Accordingly, we deny the application for stay of execution.
CONCLUSION
Based on the foregoing analysis, we affirm the trial court’s denial of Howell’s successive rule 3.851 motion for postcon-viction relief. In addition, we deny the application for stay of execution. No rehearing will be entertained by this Court. The mandate shall issue immediately.
It is so ordered.
*779 POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

. The issues raised were: (1) whether the trial court erred in refusing to appoint different defense counsel and refusing to appoint a second attorney; (2) whether the trial court erred in finding that Howell had knowingly created a great risk to many persons; (3) whether the trial court erred in finding that the murder was committed to avoid or prevent arrest; (4) whether the trial court erred in finding the murder was cold, calculated, and premeditated (CCP); (5) whether the trial court erred in finding that the victim was a law enforcement officer engaged in the performance of his official duties because the evidence did not establish that Howell knowingly killed a law enforcement officer; (6) whether the death sentence was disproportionate; (7) whether the trial court erred in failing to give special requested penalty phase instructions; (8) whether the trial court erred in weighing the mitigating circumstances against the aggravating circumstances; and (9) whether the felony-murder aggravator is unconstitutional. Id. at 677-82. The Court rejected the last three challenges without discussion. Id. at 682 n. 1.

. Howell's postconviction motion raised the following claims: (1) certain agencies withheld access to records; (2) Sheffield had a conflict of interest that impaired his ability to adequately represent Howell; (3) trial counsel was ineffective; (4) section 119.19, Florida Statutes (1999), was unconstitutional; (5) Rule 3.850's one-year time limit was unconstitutional; (6) Howell was innocent of the death penalty; (7) the jury was erroneously instructed as to the weight accorded to an expert's testimony; (8) the jury was given inadequate instructions on aggravating circumstances; (9) the trial court failed to find and consider mitigating circumstances that were established by the record; (10) Howell was denied effective assistance of counsel because counsel cannot conduct post-verdict interviews with jurors; (11) Howell's convictions were materially unreliable based upon the cumulative effect of ineffectiveness; (12) Howell's convictions were materially unreliable as established by newly discovered evidence; (13) the State withheld evidence; (14) Howell was denied his rights to mental health experts at the guilt and penalty phases; (15) execution by electrocution is cruel and unusual punishment; (16) Florida's capital sentencing scheme is unconstitutional on its face and as applied; (17) Florida’s capital sentencing scheme is unconstitutional in light of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (18) counsel was ineffective in failing to urge a nonstatutory mitigator that Trooper Fulford was responsible for his own death.

. In an affidavit accompanying Howell's motion to stay filed in this Court, Jorden asserted that it was her "understanding that by filing a motion for extension of time to file” the state postconviction motion, the federal "statute of limitations would be tolled.” Jorden stated that she filed a motion for extension in state court, which was granted, and "therefore delayed filing the [federal] motion until after the one-year” deadline.