# Supreme Court of Florida

_____

No. SC2025-0517
_____

**JEFFREY G. HUTCHINSON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2025-0518
_____

**JEFFREY G. HUTCHINSON,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

April 25, 2025

PER CURIAM.

More than two decades have passed since Jeffrey Glenn Hutchinson murdered three children under the age of ten. For these crimes, the trial court imposed sentences of death. Governor

Ron DeSantis has signed a warrant calling for the execution of those three sentences. Following issuance of the warrant, Hutchinson filed his fourth successive motion for postconviction relief. The circuit court denied the motion in its entirety, giving rise to this consolidated proceeding. Carrying out our mandatory-review function, *see* art. V, § 3(b)(1), Fla. Const., we affirm. In addition, we deny Hutchinson's requests for habeas relief,[1] a stay, and oral argument.

I

In 1998, Hutchinson lived with his girlfriend, Renee Flaherty, and her three children: Geoffrey (nine years old), Amanda (seven years old), and Logan (four years old). On the day of the murders, Hutchinson drank several beers and argued with Renee. As a result of that argument, Hutchinson packed up his belongings, including a shotgun, and went to a nearby bar where he consumed more beer. At one point, he told a patron that Renee was angry at him.

---

1. Article V, section 3(b)(9) of the Florida Constitution gives us discretionary authority to issue writs of habeas corpus.

Hutchinson left the bar and drove back to Renee's home. Armed with a shotgun, he broke down the front door. He proceeded to the bedroom where he shot Renee, Amanda, and Logan, killing each of them with a single shot to the head.

Hutchinson then turned his attention to Geoffrey, who was standing at the bedroom doorway. Perceiving the imminent danger posed by Hutchinson, Geoffrey attempted to block the first shot directed at him. Predictably, Geoffrey's defensive efforts were ineffective. The shot grazed Geoffrey's arm and struck him in the chest. Geoffrey spun around, stumbled into the living room, and fell to the floor. However, he remained conscious. Meanwhile, as Hutchinson had done after taking each shot, he pumped the shotgun to reload the chamber. Hutchinson then fired a second shot at the kneeling child. This shot hit Geoffrey in the head, killing him.

In the aftermath of the shootings, a male who did not identify himself called 911 from Renee's house. The caller began by stating, "I just shot my family." Later, the caller indicated that "some guys" had been present, though he was unsure of the exact number. At some point, the caller stopped speaking with the operator.

Within minutes of the 911 call, law enforcement arrived at Renee's home where they found Hutchinson on the floor of the garage. A phone was near Hutchinson's head and still connected to the 911 dispatcher. Body tissue from Geoffrey was on one of Hutchinson's legs, and there was gunshot residue on Hutchinson's hands.

After assessing the situation in the garage, law enforcement entered the home. Inside, officers found Renee's and Logan's bodies on the bed, Amanda's body on the bedroom floor, and Geoffrey's body in the living room. They also located a twelve-gauge pistol-grip shotgun on the kitchen counter—a shotgun later determined to be Hutchinson's.

That night, Hutchinson was taken to a nearby police station where he spoke with two officers. Among other things, Hutchinson claimed that two mask-wearing individuals were responsible for the deaths of Renee and the children.

After additional evidence was obtained, the State charged Hutchinson with four counts of first-degree murder and sought the death penalty. At trial, the State presented overwhelming evidence of Hutchinson's guilt, including the testimony of multiple witnesses

identifying Hutchinson as the 911 caller. The State also presented testimony from officers who responded to Renee's home and detained Hutchinson. Several experts opined on the significance of physical evidence recovered from the scene.

For one of his defenses, Hutchinson argued that two men barged into the house and shot Renee and the children, despite Hutchinson's best efforts to disarm them. The State, however, presented evidence that Hutchinson lacked any injuries one would expect from an intense physical altercation.

Ultimately, the jury rejected Hutchinson's defenses (including voluntary intoxication) and found him guilty as charged on all four murder counts. With the advice of his family and counsel, Hutchinson waived a penalty-phase jury.

At the ensuing penalty phase, the trial court received evidence on aggravating and mitigating circumstances. As for mitigation, the court heard that Hutchinson had served in the Gulf War and suffered effects (including nonphysical issues) from that service— what witnesses described as Gulf War Syndrome or Illness. In addition, the court heard that Hutchinson had earned multiple awards for his military service.

Following the penalty phase, the parties submitted competing sentencing memoranda. Ultimately, the trial court sentenced Hutchinson to death for the murder of each child, finding that the aggravating circumstances outweighed the mitigating circumstances.[2]

Hutchinson appealed his convictions and death sentences, but we affirmed. *Hutchinson v. State*, 882 So. 2d 943, 961 (Fla. 2004). In the twenty-plus years since our affirmance, Hutchinson has challenged his convictions and death sentences in both state and federal court to no avail. We affirmed the denial of his initial motion for postconviction relief and likewise affirmed the denial of his successive motions, including one pending when the Governor signed the death warrant. *Hutchinson v. State*, 17 So. 3d 696 (Fla. 2009) (initial state postconviction proceeding); *Hutchinson v. State*, 243 So. 3d 880 (Fla. 2018) (successive state proceeding); *Hutchinson v. State*, 343 So. 3d 50 (Fla. 2022) (successive state proceeding); *Hutchinson v. State*, No. SC2025-0497, 2025 WL

---

2. For all three children, the court found that the youth and prior-violent-felony aggravators applied. And as for Geoffrey, the court ruled that his murder was heinous, atrocious, and cruel.

1155717 (Fla. Apr. 21, 2025) (successive state proceeding).

Hutchinson fared no better in federal court. His first habeas petition was rejected on timeliness grounds. *Hutchinson v. Florida,* No. 5:09-cv-261-RS, 2010 WL 3833921 (N.D. Fla. Sept. 28, 2010), *aff'd,* 677 F.3d 1097 (11th Cir. 2012).[3] And his second petition was dismissed as an unauthorized second or successive petition. *Hutchinson v. Crews,* No. 3:13-cv-128-MW, 2013 WL 1765201 (N.D. Fla. Apr. 24, 2013).

This brings us to the claims Hutchinson raised in his fourth successive postconviction motion—the motion at issue in this appeal. As part of these claims, Hutchinson asserted that the limited warrant-litigation period violated his constitutional rights, especially in light of the claims he raised in his third successive

---

3. Hutchinson later sought relief from the judgment dismissing his first federal habeas petition, but the federal district court declined to grant relief. *Hutchinson v. Inch,* No. 3:13-cv-128-MW, 2021 WL 6335753, at *10 (N.D. Fla. Jan. 15, 2021), *certificate of appealability denied,* No. 21-10508-P, 2021 WL 6340256, at *1 (11th Cir. Mar. 24, 2021); *Hutchinson v. Sec'y, Fla. Dep't of Corr.,* No. 3:13-cv-128-MW, slip op. at 15-18 (N.D. Fla. Apr. 17, 2025), *certificate of appealability denied,* No. 25-11271, slip op. at 10-11 (11th Cir. Apr. 23, 2025).

motion.[4]  He accordingly asked for a stay.  Apart from requesting additional time to investigate and litigate his claims, Hutchinson asserted entitlement to the vacatur of his death sentences on constitutional grounds.  The court denied relief in all respects without holding an evidentiary hearing.  Having denied the claims, the court declined to issue a stay.

Hutchinson appealed, arguing various grounds for reversal.  He also asks us to grant a writ of habeas corpus.  Asserting that our review would be facilitated by additional deliberation, Hutchinson requests a stay and oral argument.

## II

We begin with Hutchinson's appeal.  He challenges the court's ruling on his numerous records requests, its summary denial of his fourth successive postconviction motion, and its refusal to enter a stay while his postconviction claims were pending.

## A

For his first issue, Hutchinson argues that the circuit court erred in denying his records requests.  We disagree.

---

4. As suggested above, we have affirmed the denial of this motion.

Hutchinson sought records under Florida Rule of Criminal Procedure 3.852(h) and (i). The circuit court ruled that subdivision (h) did not apply since the mandate in Hutchinson's direct appeal issued in 2004. As for subdivision (i), the court found that the requests did not meet the standards established in the rule or in case law interpreting it. Indeed, the court determined that many of the requests did not relate to a colorable claim for relief and, thus, amounted to a prohibited fishing expedition.

We have held that a circuit court has broad discretion in handling post-warrant records requests. *See Cole v. State*, 392 So. 3d 1054, 1065 (Fla.), *cert. denied*, 145 S. Ct. 109 (2024); *Tanzi v. State*, 50 Fla. L. Weekly S59, S60 (Fla. Apr. 1, 2025), *cert denied*, Nos. 24-6932, 24A948, 2025 WL 1037494 (U.S. Apr. 8, 2025). In this case, the rationale provided by the circuit court comports with our warrant-related precedent and was reasonable based on the facts and circumstances of this case.[5] Accordingly, we find no abuse in the court's discretionary ruling.

---

5. Though Hutchinson claims that his requests met the appropriate legal standards, his assertions are conclusory.

As an alternative, Hutchinson now claims that the operation of rule 3.852 violates due process and equal protection, at least in his case. We reject this challenge.

To the extent Hutchinson is presenting an as-applied constitutional challenge, that challenge is not preserved. *Davis v. Gilchrist Cnty. Sheriff's Off.*, 280 So. 3d 524, 531 (Fla. 1st DCA 2019) (preservation requirement). However, on the merits, the claim still fails. We have consistently rejected constitutional challenges to rule 3.852's restrictions on the availability of public records. *Dailey v. State*, 283 So. 3d 782, 793 (Fla. 2019); *Lambrix v. State*, 124 So. 3d 890, 895 n.2 (Fla. 2013). And we see nothing novel in Hutchinson's challenge. We further note that, even at this stage, Hutchinson does not say how some record believed to exist would support a colorable claim, i.e., the type of claim that could support relief.

B

Next, we consider the circuit court's rulings on the fourth successive postconviction motion. Under our de novo standard of review, we affirm the summary denial of successive claims where

- 10 -

those claims are untimely, procedurally barred, legally insufficient, or refuted by the record. *See Cole*, 392 So. 3d at 1060-61.

1

Hutchinson asserts error in the court's rejection of his claim that he was denied due process based on (1) the shortness of the warrant period, (2) the pendency of claims at the time the warrant was signed, (3) the reassignment of his third successive motion to another judge who lacked familiarity with this case, and (4) a "myriad of additional issues" frustrating counsel's ability to research and present post-warrant claims. This claim is meritless.

We have recently rejected due process arguments comparable to Hutchinson's. *Tanzi*, 50 Fla. L. Weekly at S60; *Barwick v. State*, 361 So. 3d 785, 789-90 (Fla.), *cert. denied*, 143 S. Ct. 2452 (2023). Though Hutchinson relies on different facts than those in *Tanzi* and *Barwick*, such distinctions do not justify a different outcome here.

In sum, although the warrant period in this case was admittedly short and the record lengthy, Hutchinson has been able to raise numerous postconviction claims and advance arguments to

support them.[6]  Moreover, as represented in the primary order challenged here, the newly assigned judge offered record- and rules-based reasons for rejecting Hutchinson's claims.  We also note that Hutchinson, though concerned about the judge's lack of prior familiarity with his case, has not claimed that the judge was biased in any respect.

Accordingly, for the reasons discussed above, we agree with the denial of this claim.[7]

---

6.  Based on our own independent assessment of the record, we reject Hutchinson's premise that he "was not afforded any opportunity to address the specific concerns or issues raised by the judge who ultimately issued the order denying him relief."

7.  The dissent takes issue with our resolution of this claim, implying that the facts in this case set it apart from our recent unanimous decisions rejecting claims based on the shortness of the warrant period.  *See Tanzi*, 50 Fla. L. Weekly at S60; *Barwick*, 361 So. 3d at 789.  To this end, the dissent notes that we did not receive notification from anyone—including Hutchinson's attorneys and the Office of the Attorney General—that Hutchinson had asked Governor DeSantis to find him insane under section 922.07, Florida Statutes (2024) (giving the Governor authority to declare a death-row inmate "insane" for purposes of execution).  Nor were we told about the mandatory stay until its dissolution (which happened after the Governor denied relief).  *See* § 922.07(1).  Nevertheless, despite being surprised by the lack of notice, we do not see how the events occurring in a purely executive proceeding frustrated or impeded our review of Hutchinson's distinct requests and claims here.  We similarly find misplaced the dissent's reliance on the pendency of Hutchinson's third successive motion at the time the

- 12 -

Hutchinson also argues that the circuit court erred in denying his claim challenging the warrant selection process as "arbitrary and truncated." As he sees it, "Florida's utter lack of any method, criteria, or procedure in determining whom to execute is arbitrary and capricious leading to an absurd result that violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution." We again disagree.

Our precedent contradicts Hutchinson's arguments. We have repeatedly held that the Governor's broad discretion does not contravene constitutional norms. In doing so, we have emphasized not only the executive's authority to exercise discretion, but also the *breadth* of that discretion. For instance, in *Gore v. State*, 91 So. 3d 769, 780 (Fla. 2012), we said that the "absolute discretion" reposed in the Governor did not violate the constitution.

---

warrant issued. Our rules of procedure specifically contemplate that such situations could occur and provide for expedited proceedings in order to timely resolve the pending claims. *See* Fla. R. Crim. P. 3.851(f)(5)(B).

Notwithstanding this authority, Hutchinson tells us that other states have a more structured, less-discretionary process. That may be true. But we are aware of no constitutional principle that demands a fixed formula, thereby limiting the decisionmaker in determining the order of execution. At the very least, Hutchinson has failed to show that a discretionary standard in warrant selection (regardless of the decisionmaker) offends a discrete provision of the state or federal constitution.

As another component of this claim, Hutchinson asserts that his execution would be arbitrary because of his mitigation and severe brain damage. It is true that the U.S. Supreme Court's Eighth Amendment jurisprudence forbids statutes that allow imposition of arbitrary death sentences. But that aspect of the Eighth Amendment is satisfied when the challenged statute sufficiently narrows the class of persons eligible for the death penalty. *Johnson v. Norris*, 537 F.3d 840, 850 (8th Cir. 2008). We have repeatedly held that Florida's death-penalty statute accomplishes this. *Wells v. State*, 364 So. 3d 1005, 1015 (Fla. 2023) (collecting cases). We have also upheld the validity of specific aggravators, including the prior-violent-felony (PVF) and the

"especially" heinous-attrocious-or-cruel (HAC) aggravators.[8]
*Davidson v. State*, 323 So. 3d 1241, 1250 (Fla. 2021) (upholding
PVF aggravator); *Victorino v. State*, 23 So. 3d 87, 104 (Fla. 2009)
(upholding HAC aggravator).

The Eighth Amendment also requires individualized
sentencing, which gives the capital defendant the right to present
mitigating evidence to his sentencer. *Kansas v. Marsh*, 548 U.S.
163, 175 (2006) ("In aggregate, our precedents confer upon
defendants the right to present sentencers with information
relevant to the sentencing decision and oblige sentencers to
consider that information in determining the appropriate sentence.
The thrust of our mitigation jurisprudence ends here."); *cf. Jackson
v. Cool*, 111 F.4th 689, 702 (6th Cir. 2024) ("[C]apital defendants
have a right to present *during their sentencing proceedings* 'any and
all relevant mitigating evidence that is available.' " (emphasis added)
(quoting *Skipper v. South Carolina*, 476 U.S. 1, 8 (1986))).
Hutchinson vindicated this right by presenting mitigating evidence
at his penalty phase. And despite his invocation of vague

---

8. In their current form, these aggravators are listed in section 921.141(6), Florida Statutes (2024).

constitutional principles, Hutchinson has not cited any authority holding that the Eighth Amendment provides an absolute right to present mitigating evidence at any time, regardless of its availability, regardless of the defendant's diligence in locating and presenting it, and regardless of its strength or force.[9]

Consequently, Hutchinson seeks an unjustified extension of the U.S. Supreme Court's Eighth Amendment jurisprudence and his claim is inconsistent with our precedent.[10]

3

Relying on the Eighth Amendment, Hutchinson also claims that his execution would be cruel and unusual punishment in light of his time on death row, his conditions of confinement, and his

---

9. If anything, our recent case law would be inconsistent with such a right. *See Ford v. State*, 402 So. 3d 973, 977-78 (Fla.) (rejecting constitutional challenge to rule 3.851's one-year time limitation), *cert. denied*, No. 24-6510, 2025 WL 467243 (U.S. Feb. 12, 2025); *Barwick*, 361 So. 3d at 795 (enforcing procedural bar in context of Eighth Amendment claim); *James v. State*, No. SC2025-0280, 2025 WL 798376, at *9 (Fla. Mar. 13, 2025) (refusing to reconsider prior rulings that barred merits review of certain constitutional claims), *cert. denied*, No. 24-6775, 2025 WL 864460 (U.S. Mar. 20, 2025).

10. Moreover, to the extent that Hutchinson is arguing that his brain damage categorically exempts him from the death penalty, he is wrong for the reasons we identify below.

combat-related issues.  We agree with the circuit court's rejection of this claim.

Our precedent again undermines Hutchinson's arguments. Indeed, we have consistently rejected arguments that a lengthy time on death row requires setting aside a death sentence.  *Orme v. State*, 361 So. 3d 842, 845 (Fla. 2023) (citing 2003 precedent).  And in the warrant context, we recently rejected an argument that a lengthy amount of time on death row, coupled with substandard conditions of confinement, could be a basis for vacating a death sentence.  *See Cole*, 392 So. 3d at 1064.  We are not persuaded that Hutchinson's combat-related issues make a difference for purposes of this claim.

4

Hutchinson also asserts that the circuit court erred in denying his access-to-court claim.  In that claim, Hutchinson argued that the Florida Constitution's access-to-court provision entitles him to the presence of two legal witnesses and related accommodations. We disagree.

We have rejected similar requests, finding the legal grounds advanced to be without merit.  *See Dailey*, 283 So. 3d at 791; *Long*

*v. State*, 271 So. 3d 938, 946 (Fla. 2019). And we see no reason to depart from that precedent.

## III

Aside from challenging the denial of his fourth successive motion, Hutchinson has filed a petition for habeas corpus relief. In his petition, Hutchinson raises three claims. We deny them all.

## A

For his first habeas claim, Hutchinson argues that *Atkins v. Virginia*, 536 U.S. 304 (2002), should extend to individuals, like Hutchinson, with certain neurocognitive disorders. This claim fails for multiple reasons.

First, this argument could have been raised earlier and is thus untimely and procedurally barred. Fla. R. Crim. P. 3.851(d)-(e); *Sparre v. State*, 391 So. 3d 404, 406 n.5 (Fla. 2024).[11] Second, on the merits, our precedent squarely forecloses Hutchinson's argument. We have repeatedly refused to extend *Atkins* beyond the intellectual-disability context. *See Dillbeck v. State*, 357 So. 3d 94,

---

11. Hutchinson argues that procedural bars do not apply to categorical-exemption claims, but he is mistaken. *See Dillbeck v. State*, 357 So. 3d 94, 100 (Fla. 2023); *Barwick*, 361 So. 3d at 795.

98 (Fla. 2023) (warrant); *Barwick*, 361 So. 3d at 795 (warrant); *Wells*, 364 So. 3d at 1016 (direct appeal).  We decline to revisit this precedent.

B

Hutchinson's second habeas claim seeks relief from procedural barriers, relying on the alleged ineffectiveness of state postconviction counsel as a gateway to seek merits review of otherwise barred claims.  Hutchinson focuses primarily on counsel's failure to file the initial postconviction motion in state court within the time frame that would have tolled the federal habeas statute of limitations.  In light of that claimed ineffectiveness, he urges us to adopt a rule similar to the one the U.S. Supreme Court adopted in *Martinez v. Ryan*, 566 U.S. 1, 9-17 (2012) (ineffective assistance of state postconviction counsel can provide cause to forgive a procedural default for claims of ineffective assistance of trial counsel where the state requires such claims to be raised in the initial-postconviction-review proceeding).  This claim lacks merit.

First, we have held that there is no right to the effective assistance of postconviction counsel.  *Barwick*, 361 So. 3d at 791.

- 19 -

We have also consistently recognized that *Martinez* applies solely in federal courts. *See Dailey v. State*, 279 So. 3d 1208, 1215 (Fla. 2019); *Howell v. State*, 109 So. 3d 763, 774 (Fla. 2013). What's more, *Martinez* only applied to a certain type of defaulted claim— one that asserts ineffective assistance of trial counsel. *Davila v. Davis*, 582 U.S. 521, 530 (2017). That type of claim is not at issue in this warrant proceeding.

## C

In his third and final habeas claim, Hutchinson challenges the HAC aggravator, arguing that it fails to perform the narrowing function demanded by the Eighth Amendment. This claim is untimely and procedurally barred as it could have been raised on direct appeal. *Sparre*, 391 So. 3d at 406 n.5. Moreover, we have rejected similar challenges. *Dillbeck*, 357 So. 3d at 105 (collecting cases). And last, the HAC aggravator applied only to Geoffrey's murder. Thus, even if we found it invalid, it would have no bearing on the death sentences for the murders of Amanda and Logan.

## IV

For the reasons given above, we affirm the summary denial of Hutchinson's fourth successive motion and deny habeas relief. In

light of these rulings, we also deny Hutchinson's request for oral argument and a stay. No motion for rehearing will be considered. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., dissents with an opinion.

LABARGA, J., dissenting.

I fully acknowledge the horrific facts of this death warrant case. Yet, as acknowledged by the majority, "the warrant period in this case was *admittedly short and the record lengthy*." Majority op. at 11 (emphasis added).

Additionally, the recent procedural history of this case has been affected by the following: (1) Hutchinson's third successive postconviction motion was still pending in the circuit court at the time that the death warrant was signed on March 31, 2025, and (2) on April 17, 2025, the Governor temporarily stayed Hutchinson's execution so that Hutchinson could be evaluated for competency. At the time that the stay was entered, this Court was actively considering the merits of Hutchinson's current postconviction appeal, habeas petition, and other motions. However, this Court

- 21 -

was only notified of the stay days later, *after* the competency evaluation was completed *and the stay lifted*.

Given these circumstances, I cannot concur in the majority's decision to permit this execution to proceed at this time, without ensuring a reasonable period for this Court to conduct a full review.

Because due process requires more, I dissent.

An Appeal from the Circuit Court in and for Okaloosa County,
      Lacey Powell Clark, Judge
      Case No. 461998CF001382XXXACX
And an Original Proceeding – Habeas Corpus

Dawn B. Macready, Capital Collateral Regional Counsel, Chelsea Shirley, Assistant Capital Collateral Regional Counsel, Lisa M. Fusaro, Assistant Capital Collateral Regional Counsel, and Alicia Hampton, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

      for Appellant/Petitioner

James Uthmeier, Attorney General, Charmaine M. Millsaps, Senior Assistant Attorney General, and Jason W. Rodriguez, Senior Assistant Attorney General, Tallahassee, Florida,

      for Appellee/Respondent